**In the Matter of Paul B. HUEBNER.**

No. 45S00–8903–DI–198.

Supreme Court of Indiana.

Oct. 22, 1990.

No appearance for the respondent.

Sheldon Breskow, Executive Secretary, David F. Hurley, Staff Atty., Indianapolis, for The Indiana Supreme Court Disciplinary Com'n.

## PER CURIAM.

This case is before us on a single count complaint charging Paul B. Huebner, the Respondent herein, with violations of the *Code of Professional Responsibility* and the superseding *Rules of Professional Conduct*, all involving misuse of entrusted funds. The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, Section 11(b) has held a hearing and now submits to this Court his findings of fact and conclusions of law.

Although served with notice of this proceeding pursuant to Admission and Discipline Rule 23, Section 12(d), the Respondent failed to appear in person or by attorney at such hearing, and neither party has petitioned for review of the Hearing Officer's report.

■ This Court makes the ultimate determination as to misconduct and sanction in attorney discipline cases. The review process employed in such matters involves a *de novo* examination of all matters presented to the Court. *In re Hampton* (1989), Ind., 533 N.E.2d 122. However, when unchallenged, as in this case, the Hearing Officer's findings will be accepted, but this Court reserves the right to evaluate such findings and reach its own conclusion as to misconduct. *In re Fox,* (1989), Ind., 547 N.E.2d 850.

■ There being no objection to the Hearing Officer's report, we now accept and approve the same. Accordingly, we find that the Respondent was admitted to the Bar of the State of Indiana on January 22, 1953 and is subject to this Court's disciplinary jurisdiction.

On August 10, 1983, the Respondent was appointed Executor of the Estate of Betty Presco in the Lake County Superior Court. The Respondent served in that capacity until the estate was closed on February 10, 1988.

Myrtle Beaty was a named beneficiary of the estate and was represented by another attorney. On December 18, 1986, there was a meeting between several interested parties and lawyers in an attempt to resolve disputes and finalize final distribution of the estate assets. The attorneys agreed on a final settlement but Beaty decided not to accept the agreement, against the advice of her attorney. Thus, the parties were unable to agree, and no money was distributed to Beaty, but $15,000 was distributed to another beneficiary, Andrew Presco.

On April 20, 1987, Beaty's attorney filed a petition for partial distribution which was approved on April 20, 1987. When the Respondent refused to pay the partial distribution, Beaty petitioned for a contempt

citation against the Respondent. On June 3, 1987, the trial court found the Respondent not in contempt but reaffirmed the earlier order for him to make partial distribution in the amount of $20,000.

On August 5, 1987, Beaty had still not received the ordered partial distribution, and she petitioned for reconsideration of the court's ruling on the contempt citation. On August 19, 1987, upon reconsideration, the trial court held the Respondent in contempt, and a bench warrant was ordered issued subject to Respondent's right to purge himself of contempt by making the ordered payment.

On October 30, 1987 the Respondent appeared in the office of Beaty's attorney with a certified check for full distribution of Beaty's share of the estate. The check was for $24,108.06 and was drawn on Respondent's office trust account.

All of the Presco estate funds, some $57,195.15, had been deposited on June 16, 1986 into Respondent's office trust account rather than into another fiduciary or estate account. During the months following the deposit of the Presco estate funds Respondent's trust account had a balance below $57,195.15, ranging from a $46,151.79 on July 15, 1986 to $23.46 on October 15, 1987. On October 30, 1987, $30,000 was deposited in Respondent's trust account by way of a check made payable to Stanley Inlkey, and endorsed in favor of the Respondent. Beaty's check was drawn thereafter.

On January 20, 1988, the trial court again found the Respondent in contempt and issued a bench warrant for failing to abide by the previous orders of the court. After a subsequent hearing the bench warrant was withheld until further compliance by the Respondent. The estate was finally closed on February 10, 1988.

By depositing more than $57,000 of estate funds in his office trust account and depleting such account to a balance of $23.46, the Respondent exercised unauthorized control over the property of another and thereby engaged in illegal conduct, i.e., criminal conversion as defined in IC 35–43–4–3. The findings further establish that the Respondent failed to obey a lawful court order, refused to pay funds entrusted to him in a timely fashion and knowingly used money belonging to another. By so doing, the Respondent engaged in illegal conduct involving moral turpitude which reflects adversely on his honesty and fitness as a lawyer, conduct involving dishonesty, fraud, deceit and misrepresentation and conduct prejudicial to the administration of justice in violation of D.R. 1–102(A)(3), (4) and (5) of the *Code of Professional Responsibility for Attorneys* at Law and R.P.R. 8.4(b) and (d) of the *Rules of Professional Conduct.* Respondent's conduct further constitutes neglect of a legal matter entrusted to him and is in violation of D.R. 6–101(A)(3) of the *Code* and R.P.C. 1.3 of the *Rules.*

The Respondent offers nothing as mitigation for this misconduct. Even his eventual payment to Beaty was made from funds derived from another, indicating a continued misuse of funds. Under such circumstances, this Court would be remiss in our duties were we to impose a sanction short of disbarment. *In re Powell* (1989), Ind., 526 N.E.2d 971, *In re Barefoot* (1989), Ind., 533 N.E.2d 128, 133.

It is therefore ordered that the Respondent, Paul B. Huebner, is disbarred from the practice of law.

Costs of this proceeding are assessed against the Respondent.