In the Matter of Michael A. RAGLAND.

No. 49S00–9404–DI–390.

Supreme Court of Indiana.

March 6, 1995.

Duge Butler, Jr., Indianapolis, for respondent.

Donald Lundberg, Executive Secretary, Robert C. Shook, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged Michael A. Ragland, an Indiana attorney admitted to the Bar in 1987, with violating *Rules 1.2(a), 1.4(b),* and *8.4(c)* of the *Rules of Professional Conduct for Attorneys at Law.* Thereafter, the Commis-

sion and the respondent entered into a *Statement of Circumstances and Conditional Agreement for Discipline* pursuant to *Admission and Discipline Rule 2311(g)* and now tender their agreement for this Court's review and approval. We also find that the respondent has filed the requisite Affidavit, pursuant to *Admis.Disc.R. 23(17)(a).*

We have examined the proposed agreement and find that it should be accepted and approved. The parties agree that in March of 1991, the respondent was hired by a client to represent the client in a claim against a motel and the motel's security service for damages resulting from an injury which the client suffered at the motel. The injury was caused by an employee of the motel's security agent. The motel and its security service were covered by two different liability insurance policies through two different carriers.

At a meeting on March 13, 1992, the respondent informed the client that the respondent had negotiated settlements with both insurers, totalling $30,000. The client told the respondent that she would not settle her claims for less than the $30,000, and that she wanted to settle with both insurance carriers concurrently, not at separate times. The respondent represented that the settlement with the motel's insurance carrier was for $12,500, and the settlement with the insurance carrier for the security service was for $17,500. During the same meeting, the respondent and his client signed an *Attorney–Client Settlement Statement,* which allocated to the respondent one-third (⅓) of each settlement as compensation for attorney fees plus compensation for investigation expenses, leaving the client with a total settlement of $19,114.70. The respondent also told his client that the respondent had already received the $12,500 check from the motel's insurer and would receive the $17,500 check from the other carrier in five days. Pursuant to the respondent's advice that she could do so, and in the respondent's presence, the client endorsed the $12,500 check for herself and for her husband. On March 20, 1992, the client received $7,448.04 from the respondent as her portion of the $12,500 settlement check. The respondent promised to send her

the amount due her from the other settlement when he received that check.

Although the respondent had represented to his client that he had reached a settlement with the insurance carrier for the security service, that was not the case. On April 2, 1992, the respondent wrote to that insurer requesting payment of $17,500 with a caveat that, if the money was not received by April 10, the respondent would advise his client to file suit. An agent for the insurance carrier responded, contesting the requested sum and indicating that their offer to settle was made on March 20, 1992, a week after the respondent misrepresented the matter to his client, and that the offer was for $5,000, not $17,500. The respondent followed up with a counteroffer of $12,500, but this, too, was rejected.

The respondent never filed the lawsuit. During September of 1992, he did reach a settlement with the second insurance carrier for $11,666.66. The client accepted this offer with the understanding that the respondent would not deduct attorney fees from this amount. When the respondent received the check for the agreed amount, he asserted his right to deduct one-third (⅓) as attorney fees. Because of this, the client refused to endorse the check, and it was returned unendorsed.

The client terminated her professional relationship with the respondent on September 23, 1992, and hired successor counsel who continued negotiations with the security service insurer. Sometime in late October or early November of 1992, the insurer renewed its offer to settle for $11,666.66. The client again declined the settlement because the respondent asserted an attorney's lien against one-third (⅓) of the amount.

Eventually, the new attorney filed suit naming the security service, its insurer and the respondent as defendants. The suit was dismissed on August 2, 1993, when all parties reached a settlement. The respondent agreed not to assert an attorney's lien against any forthcoming settlement, and he paid his former client $1,000 in settlement of any further claims the client may have had against him.

The agreed facts clearly and convincingly establish that the respondent did not abide by his client's decisions concerning the objectives of the representation nor did he abide by the client's decisions regarding the acceptance of an offer of settlement, thereby violating Rule 1.2(a) of the *Rules of Professional Conduct for Attorneys at Law.* He violated *Prof.Cond.R. 1.4(b)* in that he failed to explain a matter to his client to the extent reasonably necessary to permit the client to make an informed decision. The respondent's conduct involved dishonesty, deceit and misrepresentation, in violation of *Prof. Cond.R. 8.4(c).*

The parties agree that the appropriate disciplinary sanction for the respondent's misconduct is a suspension from the practice of law for a period of thirty (30) days, with automatic reinstatement. Our review of this proposed sanction involves an examination of the ethical duty violated by the lawyer, the lawyer's mental state (intentionally, knowingly, or negligently?), the extent of actual or potential injury caused by the misconduct and the existence of mitigating or aggravating circumstances. *In re Cawley* (1992), Ind., 602 N.E.2d 1022; *American Bar Association Model Standards for Imposing Lawyer Sanction, Theoretical Framework.* Respondent's representation of the existence of the $17,500 settlement with the insurer for the security service was clearly unfounded at the time he met with his client. He was aware that the client wished to settle with both carriers contemporaneously and had every indication to know that the client would not have endorsed the first settlement check had the respondent not deceived her about the existence of a settlement with *the* second insurer. Respondent's acts were motivated by his own interests and desire for a quick fee, regardless of the client's interests and wishes. Although the potential was present for harm to the client's interest, ultimately, the matter was resolved satisfactorily. In light of these considerations and the Disciplinary Commission's agreement to the proposed sanction, we find that a thirty (30) day suspension is appropriate under the circumstances of this case.

It is, therefore, ordered that Michael A. Ragland is hereby suspended from the practice of law for a period of thirty (30) days,

beginning April 6, 1995, at the conclusion of which the respondent shall be automatically reinstated.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., dissents as to sanction, believing the period of suspension is too brief.